# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-400V**

|  |
|---|
| ELIZABETH COVEY, |
| Petitioner, |
| v. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, |
| Respondent. |

Chief Special Master Corcoran

Filed: January 2, 2024

*Glen Howard Sturtevant, Jr., Rawls Law Group (Richmond), Richmond, VA, for Petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On January 8, 2021, Elizabeth Covey filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table injury - that she suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine in November 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

For the reasons discussed below, I find that Petitioner's November 13, 2019 vaccination was more likely than not administered in her right shoulder.

## I.      Relevant Procedural History

After the case's initiation and SPU assignment, Respondent filed a Status Report stating that he had reviewed Petitioner's medical records and determined this case was not appropriate for compensation. ECF No. 27. On August 23, 2022, Respondent filed a Motion for a Fact Ruling requesting that I resolve whether Petitioner's November 13, 2019 vaccination was administered in her left or right deltoid. In so doing, Respondent observed that "Petitioner's vaccine record states she received her November 13, 2019 flu vaccine in the left arm, but her medical records thereafter consistently state she received her vaccination in her right arm. Given the conflicting evidence, [R]espondent defers to the court on this factual issue." *Id.* at 3. Respondent proposes filing his Rule 4 Report within 30 days following the issuance of a fact ruling. *Id.*

On September 6, 2022, Petitioner filed a Response to Respondent's Motion arguing that the evidence supports a finding that Petitioner's flu vaccine was administered in her right arm as alleged. ECF No. 29.

This matter is ripe for my resolution.

## II.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be

accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8; *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## III.     Finding of Fact

I make these findings after a complete review of the record to include all medical records, affidavits, and the parties' briefs. Specifically, I base the findings on the following evidence:

- Petitioner received a flu vaccine on November 13, 2019, at a Rite Aid pharmacy. Ex. 3. On one page of Petitioner's vaccination record it appears that "LA," or left arm, is circled as the "Site" of administration. However, the circle is not precisely centered, as evident from the reproduction below:



    Ex. 3 at 3.

    Additionally, a separate page of Petitioner's vaccination record from Rite Aid contains a digital form providing the "Service Details" of Petitioner's November 13, 2019 vaccination. That page provides that the "Site of [Vaccine] Admin[istration]" as "Unknown." *Id.* at 11.

- Petitioner was seen by James Pearce Dupuis, D.O., at her primary care provider ("Bronson"), on November 25, 2019 (12 days post-vaccination), for "concerns about ongoing right shoulder pain." Ex. 4 at 26. Petitioner reported that her "[u]pper arm got sore after flu vaccine and hasn't let up since then – about two weeks ago." *Id.* Petitioner was assessed with "Pain in right upper arm," "Acute pain of right shoulder," and "Adverse effect of vaccine, initial encounter." *Id.* at 27. Dr. Dupuis noted that "etiology [is] unclear, but seems to be reactive to vaccine." *Id.* at 28. Petitioner was administered a steroid injection for her symptoms. *Id.*

- Petitioner was next seen by a nurse practitioner at Bronson on December 2, 2019, for "follow up on her arm pain that started after a flu vaccine." Ex. 19 at 5. Petitioner was assessed with pain in the right upper arm, given a

4

prescription for an oral steroid, and advised to follow-up with Dr. Dupuis in one week. *Id.* at 6.

- Petitioner visited Dr. Dupuis again on December 9, 2019, for a "recheck of the right shoulder pain and arm pain that she was having after a vaccine." Ex. 4 at 28. Petitioner reported that she was doing better following receipt of the oral steroid. *Id.* at 28-29.

- Petitioner was next seen by Dr. Dupuis on January 9, 2020, for a follow-up visit "with ongoing right shoulder pain." Ex. 4 at 30. It was noted that "[t]his stems from [a] reaction to [a] flu vaccine administered for her at rite aid in November. P[atien]t has done reading and convinced that the vaccine was admin[istere]d too deep and too high in her deltoid. I have reviewed some case studies of adhesive capsulitis that stemmed from vaccines and this seems to confirm that this is the possible issue here." *Id.* Petitioner elected to pursue physical therapy after discussion with Dr. Dupuis.

- Thereafter Petitioner continued to treat for her right shoulder pain through at least May 2021. Ex. 16 at 6.

The above medical entries, on balance, demonstrate that Petitioner's November 13, 2019 flu vaccine was more likely than not administered in her right shoulder, consistent with Petitioner's sworn declarations – and despite what initial vaccine administration records seem to show. Ex. 1, Ex. 13.

Respondent correctly observes that the evidence in this case is conflicting. ECF No. 28 at 3. First, it appears the pharmacist intended to circle "LA" on Petitioner's vaccine administration records – indicating that the situs of Petitioner's vaccination was her left shoulder. Ex. 3 at 3. This record warrants some weight – especially given that the recording of situs here required a specific action (circling) on the vaccine administration record.[3] However, as seen above, the pharmacist did not *clearly* circle either "LA" or "RA." Ex. 3 at 3. Additionally, another page of Petitioner's vaccine administration records states that the "Site of [Vaccine] Admin[istration]" is "Unknown," contradicting the initial record. *Id.* at 11.

Second, the contemporaneous medical records in which Petitioner's shoulder pain was discussed consistently and repeatedly report right shoulder pain associated with the vaccination – necessarily implying that she received her vaccination in her right shoulder.

---

[3] Vaccine administration records with an electronic recording of situs are more easily prone to error. *See Rodgers v. Sec'y of Health & Human Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020).

Ex. 4 at 26 -28, 30; Ex. 19 at 5-6. As discussed in other decisions, consistent reporting to treating physicians that a shoulder injury was associated with a vaccination received in the same shoulder can serve as probative evidence sufficient to overcome a contradictory vaccination record – even when that record precedes the treatment evidence. *See e.g.*, *Mogavero v. Sec'y of Health & Human Servs.*, No. 18-1197V, 2020 WL 4198762, at *3 (Fed. Cl. Spec. Mstr. May 12, 2020); *Hanna v. Sec'y of Health & Human Servs.*, No. 18-1455V, 2021 WL 3486248, at *9-10 (Fed. Cl. Spec. Mstr. July 15, 2021); *Mezzacapo v. Sec'y of Health & Human Servs.*, No. 18-1977V, 2021 WL 1940435, at *7 (Fed. Cl. Spec. Mstr. Apr. 19, 2021).

Accordingly, I find there is preponderant evidence to establish the vaccination alleged as causal in this case was administered to Petitioner in the right deltoid on November 13, 2019.

## IV.      Scheduling Order

Based upon my preliminary review of the complete record in this case, and the instant Fact Ruling, Petitioner has established a SIRVA Table case. Accordingly, I encourage the parties to *immediately* commence informal discussions to resolve this case. Petitioner should proceed at this time with providing Respondent a reasonable demand. **The following is ORDERED**:

- **Respondent shall file his Rule 4(c) Report by no later than <u>Thursday, February 1, 2024.</u>**

- **Petitioner shall file a status report updating me on the parties' informal discussions to resolve this case, by no later than <u>Thursday, February 1, 2024</u>. That status report shall state the date by which Petitioner provided, or intends to provide, a demand to Respondent. Additionally, Petitioner shall confirm whether any Medicaid lien exists, and if so, state the date by which Petitioner anticipates providing Respondent a letter from the appropriate state agency verifying the amount of the lien.**

    **IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master